# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LECOMPTE,<br><br>           Plaintiff,<br><br>      vs.<br><br>DHAH, et al.,<br><br>           Defendants. | 1:11cv02105 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>(Document 15) |

   Plaintiff Timothy LeCompte ("Plaintiff"), a state prisoner proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 21, 2011. On February 1, 2013, the Court found a cognizable Eighth Amendment claim against Defendants F.N.P. Dhah, Dr. Moon, Dr. Jeffrey Wang, Teresa Macias and L. D. Zamora.

   On April 29, 2013, Defendants Moon, Wang, Macias and Zamora filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). There is no indication that Defendant Dhah has been served.

   Plaintiff was served with the motion at his correct place of incarceration on June 14, 2013. He did not oppose the motion. ECF No. 21.

1

## I. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).  Further, although the pleading standard is now higher, the Ninth Circuit has continued to emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. May 25, 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

## II. ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Plaintiff alleges that on May 14, 2011, the nurse who passes out his medication told him that his Gabapentin, which he takes for neurologic neuropathic pain, was being tapered down. The nurse informed Plaintiff that it would eventually be discontinued and would only be prescribed for three reasons.  Plaintiff states that he has been on this medication since 2004, and that he has one of the three ailments required for Gabapentin- post Herpetic neuralgia.  Plaintiff told the nurse that he has severe nerve damage, and she told him to file a medical appeal.

On May 15, 2011, Plaintiff filed a Health Care Appeal, stating that he has nerve damage to his left arm, was not seen by a doctor prior to the decision to decrease his dose and needs his original Gabapentin dose.  Ex. A-1.

On May 18, 2011, Plaintiff was called in to see the yard doctor, Dr. Ulit, for a right shoulder problem.  At the end of the appointment, Plaintiff asked him about his medication and why his Gabapentin was being discontinued.  Dr. Ulit reviewed Plaintiff's medical file and verified Plaintiff's nerve damage.  Dr. Ulit examined Plaintiff's left arm, found nerve damage, and rewrote his Gabapentin prescription back to the original dose for six months.  The prescription was sent to Defendant Chief Medical Officer Dr. Jeffrey Wang for approval.  Dr. Ulit also prescribed methadone for Plaintiff's shoulder.

On June 15, 2011, Plaintiff was seen by Defendant Nurse Practitioner Dhah in connection with his May 15, 2011, Health Care Appeal.  Plaintiff explained to Defendant Dhah that Dr. Ulit had already written his prescription back to the original dose and that he was waiting for Defendant Wang to approve it.  Without performing an examination or looking at Plaintiff's medical file, Defendant Dhah told Plaintiff that he did not have nerve damage to warrant a Gabapentin prescription.  Defendant Dhah then called Defendant Wang and told him that Plaintiff did not have nerve damage to support Dr. Ulit's prescription for Gabapentin.

On June 16, 2011, Defendant Wang denied the prescription.

Plaintiff contends that there are numerous reports of nerve damage in his medical file, but one has to look back five or six years.  At the "top" of his medical file, there is only information about his recent right shoulder issues.  During the time Plaintiff was being tapered off Gabapentin, his nerve pain became greater and began to significantly affect his daily activities.  The chronic pain also made it difficult for him to sleep.  Plaintiff began putting in Health Care Services Requests to ask for help because he was in pain.  Plaintiff asked to see the yard doctor. Ex. H-1, H-2, H-3, H-4.

In response to Plaintiff's June 17, 2011, Health Care Services Request, Nurse Holt indicated on June 20, 2011, that Plaintiff was scheduled for an evaluation with Defendant Dr. Moon.  Plaintiff alleges that at some point, the nurse asked Dr. Moon if he would see Plaintiff

sooner because of the nerve pain, but he told Plaintiff that he had to wait until the August 24, 2011, scheduled appointment.

On June 20, 2011, Defendant Wang denied Plaintiff's Health Care Appeal at the first level. Ex. A-1.

On June 24, 2011, Plaintiff sent his Health Care Appeal to the second level and explained what happened during Defendant Dhah's interview.

On July 7, 2011, Defendant Wang and Defendant Macias denied Plaintiff's second level appeal. Ex. A-2. Plaintiff contends that Defendants Wang and Macias did not read his appeal or review his medical file, and he believes that they accepted Defendant Dhah's findings in denying his appeal. He also alleges that Defendants Wang and Macias addressed his shoulder problem, but this appeal is not about his shoulder.

On July 28, 2011, Plaintiff sent his Health Care Appeal to the third level, with copies of his medical records documenting nerve damage to his left arm.

Plaintiff saw Defendant Moon on August 24, 2011. However, Dr. Moon told Plaintiff that he would not talk about his nerve damage and would let the appeal deal with it.

On October 27, 2011, Plaintiff's Health Care Appeal was denied at the third level by Defendant Zamora. Ex. A-3. Plaintiff contends that Defendant Zamora, just like Defendants Wang and Macias, addressed his shoulder issue. He believes that Defendants Zamora, Wang and Macias have failed to understand that his appeal is about his nerve pain, rather than his shoulder issue. He alleges that no one has "done anything to help or talk about in any of there [sic] denials of this appeal talked about what the appeal is about, left arm nerve damage, not right shoulder orthopedic problems. . ." Compl. 6.

Plaintiff alleges that through the appeal process, he was never examined by a doctor for nerve damage and his medical file was never reviewed. Instead, Defendants Wang, Macias and Zamora relied on Defendant Dhah's interview. He also alleges that during the appeal, no one

4

"[spoke] on [his] neural damage" and only discussed his right shoulder issue. Compl. 6. Plaintiff alleges that everyone involved with the appeals process violated his rights by denying him Gabapentin. He contends that the methadone does not work for nerve pain and that he is in serious pain.

Plaintiff attaches his declaration to the complaint and provides more recent facts. On November 6, 2011, Plaintiff filed a new Health Care Appeal. Ex. J. On November 16, 2011, Dr. Moon saw him and put him on Gabapentin for ninety days at the lowest dose. Plaintiff believes that this proves he has nerve damage in his left arm and that he should have been provided treatment and medication during the appeals process.

### III. DISCUSSION

#### A. Eighth Amendment Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment, but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm,

680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.  Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

    B.    <u>Analysis</u>

Defendants argue that the responses at the first, second and third level review, all of which are attached as exhibits to Plaintiff's complaint and referred to throughout the complaint, contradict his allegations.  Specifically, Defendants argue that these exhibits demonstrate that (1) they did not act with deliberate indifference because they were unaware of a serious risk to Plaintiff's medical needs; (2) they took reasonable measures to abate any risk; and (3) their actions caused no actual harm to Plaintiff.

To analyze Defendants' arguments, the Court must first set out the additional information contained in Plaintiff's exhibits.  When reviewing a motion to dismiss, the court "consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam).  Exhibits that contradict the allegations of a complaint may fatally undermine those allegations.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by 275 F.3d 1187 (2001).

On June 20, 2011, when Defendant Wang denied Plaintiff's Health Care Appeal at the first level, he also told Plaintiff that his case would "be submitted to the Pain Committee for further evaluation."  Ex. A-1.

On July 7, 2011, Defendant Wang and Defendant Macias denied Plaintiff's second level appeal, finding that Plaintiff did not have one of the three reasons to merit a Gabapentin prescription. Defendants Wang and Macias further explained that Dr. Ulit had performed a pain assessment on May 18, 2011, which will be presented "to the Pain Committee for recommendation of opioid use or possibly increasing the Gabapentin dosage." The denial concluded, "Until further evaluation, your request for Gabapentin is denied at this time." Ex. A-2.

Finally, on October 27, 2011, Plaintiff's Health Care Appeal was denied at the third level by Defendant Zamora. Ex. A-3. Defendant Zamora stated that Plaintiff's Unit Health Record was reviewed by clinical staff, who determined that he received appropriate medical treatment. Plaintiff had been provided with Ibuprofen and methadone and his "latest encounters with providers indicate[d] that [he] did not report [his] left hand pain as problematic…" Defendant Zamora explained that Plaintiff's contention that he was not receiving adequate medication was refuted by professional health care staff familiar with his medical history, as well as a review of Plaintiff's medical record. Plaintiff was encouraged to cooperate with his treatment providers in order to receive the proper care. Ex. A-3.

Based on these exhibits, Defendants first argue that they were not deliberately indifferent because they were unaware of a risk of harm. Defendants suggest that Defendant Wang denied Plaintiff's appeal at the second level after reviewing his medical record and finding that his condition did not satisfy one of the three criteria for receiving a Gabapentin prescription. Therefore, when Dr. Wang and Dr. Moon evaluated Plaintiff's medical condition, they were unaware of any risk of harm because he did not have a medical need for a Gabapentin prescription.

Defendants' argument, however, attempts to turn the issue at the heart of this action into an escape hatch. Plaintiff's action is based on his allegation that he did not receive adequate care

7

for his pain. At this stage, Defendants cannot use their alleged failure to provide care as a means to end this action. It also ignores Plaintiff's contention that Dr. Ulit had verified the nerve damage and rewritten his prescription. When Plaintiff saw Defendant Dhah, who was not a doctor and did not examine Plaintiff, Defendant Dhah called Defendant Wang to cancel the prescription that Dr. Ulit had written. Allegedly based on this conversation, Defendant Wang denied the request, which had been pending before him for almost one month, and then denied Plaintiff's first level review the next day.

Drawing all reasonable inferences in favor of Plaintiff, Plaintiff's exhibits are not specific enough to contradict or overcome his allegations.

In addition to his denial at the first level, Defendant Wang, along with Defendant Macias, denied Plaintiff at the second level of review. They, too, allegedly relied on Defendant Dhah's assessment and while they noted Dr. Ulit's examination, they apparently ignored his positive findings. Plaintiff also alleges that he informed Defendants Wang and Macias of the inadequacies of Defendant Dhah's interview.

Similarly, Defendant Zamora denied Plaintiff at the third level of review despite Plaintiff's citation to Dr. Ulit's positive examination and his complaint that he had not been examined for his nerve pain since the filing of his appeal.

Finally, as to Defendant Moon, Defendants' contention that he was unaware of any risk is wholly undermined by Plaintiff's description of the August 24, 2011, examination. Plaintiff states that he saw Defendant Moon on August 24, 2011, apparently for his shoulder issue. Plaintiff complained about his nerve pain to Defendant Moon, but he refused to talk about it and told Plaintiff that he would let the appeal take care of the issue. Defendant Moon was also aware of the pain months before the August 24 appointment, when he told Plaintiff that he had to wait until his scheduled appointment to be seen.

Plaintiff's allegations against Defendants Wang, Macias, Zamora and Moon are sufficient, at this stage of the litigation, to support an Eighth Amendment claim based on his contention that he received inadequate care for his nerve pain. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

To the extent that Defendants Wang, Macias and Zamora argue that they cannot be sued in a supervisory capacity, their argument misunderstands the basis of liability. Defendants Wang, Macias and Zamora were put on notice of Plaintiff's allegations during his appeals process. In such a situation, the basis for liability is not *respondeat superior*, but the failure of higher-level officials to take action despite being on notice of the alleged violation. Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011); Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); see also Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012) (warden and associate warden not entitled to summary judgment in light of evidence that they were aware of grievances regarding inappropriate medical treatment and other documents relating to medical issues).

## IV.   FINDINGS AND RECOMMENDATIONS

Based on the above, the Court HEREBY RECOMMENDS that Defendants' Motion to Dismiss for failure to state a claim, filed on April 29, 2013, be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may file a reply to the objections within fourteen (14) days of service of the objections. The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 29, 2013**  /s/ *Dennis L. Beck*
UNITED STATES MAGISTRATE JUDGE