# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LeCOMPTE,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>DHAH, et al.,<br><br>　　　　　Defendants. | 1:11cv02105 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT DHAH'S MOTION FOR SUMMARY JUDGMENT<br>(Document 33)<br><br>THIRTY-DAY OBJECTION DEADLINE |

　　　　Plaintiff Timothy LeCompte ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's December 21, 2011, complaint against Defendants Dhah, Moon, Macias, Wang and Zamora for violation of the Eighth Amendment.

　　　　Defendant Dhah filed a motion for summary judgment[1] on September 9, 2014.[2]

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[2] The remaining Defendants filed their motion for summary judgment on October 6, 2014.  The motion is pending.

1

After the time for filing an opposition had passed, the Court notified Plaintiff that if he did not file an opposition, the motion would be decided without his input. The Court gave Plaintiff twenty-one additional days to file an opposition.

Plaintiff has failed to file an opposition, or otherwise contact the Court. Accordingly, the Court deems the motion suitable for decision pursuant to Local Rule 230(l).

## I.      LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Kern Valley State Prison.  The events at issue occurred while Plaintiff was incarcerated at Corcoran State Prison.

Plaintiff alleges that on May 14, 2011, the nurse who passes out his medication told him that his Gabapentin, which he takes for neurologic neuropathic pain, was being tapered down.  The nurse informed Plaintiff that it would eventually be discontinued and would only be prescribed for three reasons.  Plaintiff states that he has been on this medication since 2004, and that he has one of the three ailments required for Gabapentin- post herpetic neuralgia.  Plaintiff told the nurse that he has severe nerve damage, and she told him to file a medical appeal.

On May 15, 2011, Plaintiff filed a Health Care Appeal, stating that he has nerve damage to his left arm, was not seen by a doctor prior to the decision to decrease his dose and needs his original Gabapentin dose.  Ex. A-1.

On May 18, 2011, Plaintiff was called in to see the yard doctor, Dr. Ulit, for a right shoulder problem.  At the end of the appointment, Plaintiff asked him about his medication and why his Gabapentin was being discontinued.  Dr. Ulit reviewed Plaintiff's medical file and verified Plaintiff's nerve damage.  Dr. Ulit examined Plaintiff's left arm, found nerve damage,

and rewrote his Gabapentin prescription back to the original dose for six months. The prescription was sent to Defendant Chief Medical Officer Dr. Jeffrey Wang for approval. Dr. Ulit also prescribed Methadone for Plaintiff's shoulder.

On June 15, 2011, Plaintiff was seen by Defendant Nurse Practitioner Dhah in connection with his May 15, 2011, Health Care Appeal. He explained to Defendant Dhah that Dr. Ulit had already written his prescription back to the original dose, and that he was waiting for Defendant Wang to approve it. Without performing an examination or looking at Plaintiff's medical file, Defendant Dhah told Plaintiff that he did not have nerve damage to warrant a Gabapentin prescription. Defendant Dhah then called Defendant Wang and told him that Plaintiff did not have nerve damage to support Dr. Ulit's prescription for Gabapentin.

On June 16, 2011, Defendant Wang denied the prescription.

Plaintiff contends that there are numerous reports of nerve damage in his medical file, but one has to look back five or six years. At the "top" of his medical file, there is only information about his recent right shoulder issues. During the time Plaintiff was being tapered off Gabapentin, his nerve pain became greater and began to significantly affect his daily activities. The chronic pain also made it difficult for him to sleep. Plaintiff began putting in Health Care Services Requests to ask for help because he was in pain. Plaintiff asked to see the yard doctor. Ex. H-1, H-2, H-3, H-4.

In response to Plaintiff's June 17, 2011, Health Care Services Request, Nurse Holt indicated on June 20, 2011, that Plaintiff was scheduled for an evaluation with Defendant Dr. Moon. Plaintiff alleges that at some point, the nurse asked Dr. Moon if he would see Plaintiff sooner because of the nerve pain, but he told Plaintiff that he had to wait until the August 24, 2011, scheduled appointment.

On June 20, 2011, Defendant Wang denied Plaintiff's Health Care Appeal at the first level. Ex. A-1.

4

On June 24, 2011, Plaintiff sent his Health Care Appeal to the second level and explained what happened during Defendant Dhah's interview.

On July 7, 2011, Defendant Wang and Defendant Macias denied Plaintiff's second level appeal. Ex. A-2. Plaintiff contends that Defendants Wang and Macias did not read his appeal or review his medical file, and he believes that they accepted Defendant Dhah's findings in denying his appeal. He also alleges that Defendants Wang and Macias addressed his shoulder problem, but the appeal was not about his shoulder.

On July 28, 2011, Plaintiff sent his Health Care Appeal to the third level, with copies of his medical records documenting nerve damage to his left arm. Plaintiff saw Defendant Moon on August 24, 2011. However, Dr. Moon told Plaintiff that he would not talk about his nerve damage and would let the appeal deal with it.

On October 27, 2011, Plaintiff's Health Care Appeal was denied at the third level by Defendant Zamora. Ex. A-3. Plaintiff contends that Defendant Zamora, just like Defendants Wang and Macias, addressed his shoulder issue. He believes that Defendants Zamora, Wang and Macias have failed to understand that his appeal is about his nerve pain, rather than his shoulder issue. He alleges that no one has "done anything to help or talk about in any of there [sic] denials of this appeal talked about what the appeal is about, left arm nerve damage, not right shoulder orthopedic problems. . ." Compl. 6.

Plaintiff alleges that throughout the appeal process, he was never examined by a doctor for nerve damage and his medical file was never reviewed. Instead, Defendants Wang, Macias and Zamora relied on Defendant Dhah's interview. He also alleges that during the appeal, no one "[spoke] on [his] neural damage" and only discussed his right shoulder issue. Compl. 6. Plaintiff alleges that everyone involved with the appeals process violated his rights by denying him Gabapentin. He contends that the Methadone does not work for nerve pain and that he is in serious pain.

5

Plaintiff attaches his declaration to the complaint and provides more recent facts. On November 6, 2011, Plaintiff filed a new Health Care Appeal. Ex. J. On November 16, 2011, Dr. Moon saw him and put him on Gabapentin for ninety days at the lowest dose. Plaintiff believes that this proves he has nerve damage in his left arm and that he should have been provided treatment and medication during the appeals process.

### III.  UNDISPUTED MATERIAL FACTS[3]

Defendant Dhah is licensed as a Registered Nurse with the State of California. Between 2008 and 2011, he worked as an independent contractor at Corcoran State Prison and was employed as a Nurse Practitioner. Dhah Decl. ¶ 5.

As a Nurse Practitioner, Defendant Dhah is required to follow the guidelines imposed by the California Penal Health Care Services ("CPHCS"), including guidelines regarding the prescription of Gabapentin. Dhah Decl. ¶ 6. In May 2011, the CPHCS revised its guidelines regarding the prescription of pain medications such as Gabapentin. The revision limited the prescription of Gabapentin to "non-formulatory" status and restricted its use to the following conditions: (1) adjunctive therapy for partial complex seizures; (2) post herpetic neuralgia; or (3) individuals with objective evidence of severe disease who are not on opioids. Dhah Decl. ¶ 6, Ex. B.

Defendant Dhah saw Plaintiff on one occasion- June 15, 2011. Dhah Decl. ¶ 7, Ex. C. Plaintiff was seen in connection with his May 15, 2011, appeal to renew his Gabapentin. Dhah Decl. ¶ 8. At the time of the visit, Plaintiff was still on Gabapentin, but it was being tapered pursuant to CPHCS guidelines. Plaintiff was also receiving the pain medications Imitrex, Methadone and Ibuprofen. Dhah Decl. ¶ 8.

---

[3]  Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 260(b). Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

During the visit, Plaintiff requested that his prescription for Gabapentin be renewed at 3600 mg per day, which is a high level dose. Dhah Decl. ¶ 9. Plaintiff told Defendant Dhah that his primary care physician, Dr. Ulit, planned to take Plaintiff's case to the Pain Committee for review. Dhah Decl. ¶ 8.

Defendant Dhah told Plaintiff that he was not able to agree to his request for a renewed prescription of 3600 mg per day due to the changes in CPHCS policy, but that if Dr. Ulit and the Pain Committee approved a new prescription, it would be ok. Dhah Decl. ¶ 10.

Defendant Dhah completed a progress note for the June 15, 2011, visit.[4] Plaintiff was seen for migraine headaches, as well as his appeal. According to Defendant Dhah's note, Plaintiff wanted Gabapentin for his right shoulder pain, which sometimes went up towards his neck and down towards his upper arm. Plaintiff indicated that Dr. Ulit was getting ready to take his case to the Pain Committee. Defendant took Plaintiff's vital signs and noted that he was alert and in no acute distress. Defendant Dhah noted that Plaintiff's pupils were equal, round and reactive to light, and that his neck was supple with full range of motion. Plaintiff's lungs were clear and his heart rate was regular. Plaintiff's right shoulder was mildly tender anteriorly with palpation, but with no erythema. The shoulder examination was limited because Plaintiff was in waist chains. However, he seemed to have good range of motion. Plaintiff's cranial nerves were intact. Dhah Decl., Ex. C.

Pursuant to the progress note, Defendant Dhah continued Plaintiff's Imitrex and added Propranolol. He also noted that since Plaintiff was on Methadone and his primary care physician was considering taking Plaintiff's case to the Pain Committee, and because Gabapentin was not used for shoulder pain pursuant to CDCR policy, he could not authorize a maximum dose of Gabapentin at the time. Dhah Decl., Ex. C.

---

[4] Plaintiff does not attach a copy of the progress note to his complaint. Since he has not submitted an opposition, he has not called into question the authenticity of the document or disputed its contents.

7

Based on Defendant Dhah's review of Plaintiff's medical chart, Plaintiff was receiving pain medication on June 15, 2011, and continued to receive pain medication thereafter.  Dhah Decl. ¶ 11.

## IV.     DISCUSSION

### 1.     Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, an inmate must demonstrate deliberate indifference to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

    2.    Analysis

Plaintiff contends that Defendant Dhah was deliberately indifferent when he refused to renew his Gabapentin prescription, purportedly without an examination or review of his medical records.

It is undisputed that in May 2011, prior to Plaintiff's visit with Defendant Dhah, CPHCS changed the regulations relating to Gabapentin and approved it for use in only three situations. It is undisputed that Plaintiff saw Defendant Dhah on June 15, 2011, for migraine headaches and in connection with his appeal. It is also undisputed that at the conclusion of the visit, Defendant Dhah determined that Plaintiff did not qualify for a Gabapentin prescription, but noted that if the Pain Committee and Dr. Ulit approved the prescription, it would be "ok." Finally, it is undisputed that Plaintiff was on numerous pain medications at the time of the visit, and continued with those medications thereafter.

Defendant argues that the undisputed facts demonstrate that he was not deliberately indifferent to Plaintiff's serious medical need. Rather, Defendant argues that Plaintiff's allegations are nothing more than a disagreement with his treatment decisions.

The Court agrees. Defendant has met his burden of demonstrating the absence of evidence demonstrating that he acted with deliberate indifference. Defendant Dhah saw Plaintiff

on June 15, 2011, and determined that he did not meet the criteria for a Gabapentin prescription under the new CPHCS regulations.  While Plaintiff complained of pain, Defendant Dhah knew that Plaintiff was taking numerous pain medications.  Under these facts, there is no evidence to demonstrate a purposeful act, or failure to respond to, Plaintiff's pain or possible medical need.

Rather, the undisputed facts show that Plaintiff simply disagreed with Defendant Dhah's course of treatment.  The needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  However, a difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference.  Snow, 681 F.3d at 987, (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Here, there is no evidence that Defendant Dhah's chosen of course of treatment was medically unacceptable under the circumstances, and that he chose this course in conscious disregard of an excessive risk to Plaintiff's health.

Even if Defendant Dhah's determination was incorrect, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1977); Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

The burden now shifts to Plaintiff to produce evidence sufficient to demonstrate the existence of a genuine dispute of fact.  Plaintiff's verified complaint fails to produce any such evidence.

Plaintiff alleges that he met one of the three situations where a Gabapentin prescription is permitted. However, as a lay witness, Plaintiff is not qualified to render an opinion on his medication conditions. Fed. R. Evid. 701, 702. Plaintiff also submits evidence to show that in November 2011, he was approved for a Gabapentin prescription. However, that he may have ultimately qualified does not mean that at the time of the June 2011, visit, Defendant Dhah acted with deliberate indifference.

Plaintiff also alleges that Defendant Dhah did not perform a medical examination. However, Defendant Dhah has submitted a progress note that demonstrates that he did indeed examine Plaintiff. Plaintiff has not submitted an opposition, and he has therefore failed to dispute the contents of the progress note, or the note's authenticity.

Finally, Plaintiff attempts to suggest that Defendant Dhah acted with questionable intent when he allegedly called Defendant Wang to tell him that Plaintiff did not have a condition to warrant the pending Gabapentin prescription. However, even if Defendant Dhah called Defendant Wang, it was simply to convey the findings of his interview with Plaintiff as it related to Plaintiff's medical appeal.

**V.      FINDINGS AND RECOMMENDATIONS**

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant Dhah's motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within fourteen (14) days from the date of service of the objections. The

///

///

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 11, 2015**                    /s/ *Dennis L. Beck*
                                                      UNITED STATES MAGISTRATE JUDGE