# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LeCOMPTE,<br><br>             Plaintiff,<br><br>      vs.<br><br>DHAH, et al.,<br><br>             Defendants. | 1:11cv02105 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS WANG, MOON, MACIAS AND ZAMORA'S MOTION FOR SUMMARY JUDGMENT<br><br>(Document 38)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Timothy LeCompte ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's December 21, 2011, complaint against Defendants Dhah, Moon, Macias, Wang and Zamora for violation of the Eighth Amendment.

Defendants Wang, Moon, Macias and Zamora filed a motion for summary judgment[1] on October 6, 2014.[2]

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[2] Defendant Dhah filed a motion for summary judgment in September 2014. The motion was addressed by separate Findings and Recommendations.

1

After the time for filing an opposition had passed, the Court notified Plaintiff that if he did not file an opposition, the motion would be decided without his input. The Court gave Plaintiff twenty-one additional days to file an opposition.

Plaintiff has failed to file an opposition, or otherwise contact the Court. Accordingly, the Court deems the motion suitable for decision pursuant to Local Rule 230(l).

## I.     LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Kern Valley State Prison. The events at issue occurred while Plaintiff was incarcerated at Corcoran State Prison ("CSP").

Plaintiff alleges that on May 14, 2011, the nurse who passes out his medication told him that his Gabapentin, which he takes for neurologic neuropathic pain, was being tapered down. The nurse informed Plaintiff that it would eventually be discontinued and would only be prescribed for three reasons. Plaintiff states that he has been on this medication since 2004, and that he has one of the three ailments required for Gabapentin- post herpetic neuralgia. Plaintiff told the nurse that he has severe nerve damage, and she told him to file a medical appeal.

On May 15, 2011, Plaintiff filed a Health Care Appeal, stating that he has nerve damage to his left arm, was not seen by a doctor prior to the decision to decrease his dose, and needs his original Gabapentin dose. Ex. A-1.

On May 18, 2011, Plaintiff was called in to see the yard doctor, Dr. Ulit, for a right shoulder problem. At the end of the appointment, Plaintiff asked him about his medication and why his Gabapentin was being discontinued. Dr. Ulit reviewed Plaintiff's medical file and verified Plaintiff's nerve damage. Dr. Ulit examined Plaintiff's left arm, found nerve damage,

3

and rewrote his Gabapentin prescription back to the original dose for six months.  The prescription was sent to Defendant Chief Medical Officer Dr. Jeffrey Wang for approval.  Dr. Ulit also prescribed Methadone for Plaintiff's shoulder.

On June 15, 2011, Plaintiff was seen by Defendant Nurse Practitioner Dhah in connection with his May 15, 2011, Health Care Appeal.  He explained to Defendant Dhah that Dr. Ulit had already written his prescription back to the original dose, and that he was waiting for Defendant Wang to approve it.  Without performing an examination or looking at Plaintiff's medical file, Defendant Dhah told Plaintiff that he did not have nerve damage to warrant a Gabapentin prescription.  Defendant Dhah then called Defendant Wang and told him that Plaintiff did not have nerve damage to support Dr. Ulit's prescription for Gabapentin.

On June 16, 2011, Defendant Wang denied the prescription.

Plaintiff contends that there are numerous reports of nerve damage in his medical file, but one has to look back five or six years.  At the "top" of his medical file, there is only information about his recent right shoulder issues.  During the time Plaintiff was being tapered off Gabapentin, his nerve pain became greater and began to significantly affect his daily activities.  The chronic pain also made it difficult for him to sleep.  Plaintiff began putting in Health Care Services Requests to ask for help because he was in pain.  Plaintiff asked to see the yard doctor.  Ex. H-1, H-2, H-3, H-4.

In response to Plaintiff's June 17, 2011, Health Care Services Request, Nurse Holt indicated on June 20, 2011, that Plaintiff was scheduled for an evaluation with Defendant Dr. Moon.  Plaintiff alleges that at some point, the nurse asked Dr. Moon if he would see Plaintiff sooner because of the nerve pain, but he told Plaintiff that he had to wait until the August 24, 2011, scheduled appointment.

On June 20, 2011, Defendant Wang denied Plaintiff's Health Care Appeal at the First Level.  Ex. A-1.

On June 24, 2011, Plaintiff sent his Health Care Appeal to the Second Level and explained what happened during Defendant Dhah's interview.

On July 7, 2011, Defendant Wang and Defendant Macias denied Plaintiff's Second Level appeal. Ex. A-2. Plaintiff contends that Defendants Wang and Macias did not read his appeal or review his medical file, and he believes that they accepted Defendant Dhah's findings in denying his appeal. He also alleges that Defendants Wang and Macias addressed his shoulder problem, but the appeal was not about his shoulder.

On July 28, 2011, Plaintiff sent his Health Care Appeal to the Third Level, with copies of his medical records documenting nerve damage to his left arm. Plaintiff saw Defendant Moon on August 24, 2011. However, Dr. Moon told Plaintiff that he would not talk about his nerve damage and would let the appeal deal with it.

On October 27, 2011, Plaintiff's Health Care Appeal was denied at the Third Level by Defendant Zamora. Ex. A-3. Plaintiff contends that Defendant Zamora, just like Defendants Wang and Macias, addressed his shoulder issue. He believes that Defendants Zamora, Wang and Macias have failed to understand that his appeal is about his nerve pain, rather than his shoulder issue. He alleges that no one has "done anything to help or talk about in any of there [sic] denials of this appeal talked about what the appeal is about, left arm nerve damage, not right shoulder orthopedic problems. . ." Compl. 6.

Plaintiff alleges that throughout the appeal process, he was never examined by a doctor for nerve damage and his medical file was never reviewed. Instead, Defendants Wang, Macias and Zamora relied on Defendant Dhah's interview. He also alleges that during the appeal, no one "[spoke] on [his] neural damage" and only discussed his right shoulder issue. Compl. 6. Plaintiff alleges that everyone involved with the appeals process violated his rights by denying him Gabapentin. He contends that the Methadone does not work for nerve pain and that he is in serious pain.

5

Plaintiff attaches his declaration to the complaint and provides more recent facts. On November 6, 2011, Plaintiff filed a new Health Care Appeal. Ex. J. On November 16, 2011, Dr. Moon saw him and put him on Gabapentin for ninety days at the lowest dose. Plaintiff believes that this proves he has nerve damage in his left arm and that he should have been provided treatment and medication during the appeals process.

### III.  UNDISPUTED MATERIAL FACTS[3]

During the relevant time period, Defendant Dr. Wang worked at CSP as the Acting Chief Medical Officer. Wang Decl. ¶ 1. Defendant Dr. Moon worked at CSP as a Physician and Surgeon. Moon Decl. ¶ 1. Defendant Macias worked at CSP as the Chief Executive Officer. Macias Decl. ¶ 1. Defendant Zamora worked as the Chief of the Inmate Correspondence and Appeals Branch ("ICAB"), formerly known as the Office of Third Level Appeals. Zamora Decl. ¶ 1.

Because of the large volume of inmate appeals submitted to both at both CSP and ICAB, many of the appeals are delegated to designated reviewers for review and sign-off. Macias Decl. ¶¶ 2-3; Zamora Decl.¶¶ 7-8. Defendants Macias and Zamora did not personally review or sign off on appeals that were designated to reviewers. Macias Decl. ¶ 4; Zamora Decl. ¶ 9. Defendants Macias and Zamora are not licensed medical providers. Macias Decl. ¶ 5; Zamora Decl. ¶ 4.

In early 2011, the California Department of Corrections and Rehabilitation ("CDCR") implemented new state-wide policies regarding prescriptions for Gabapentin. New prescriptions for Gabapentin became non-formulatory, and would be restricted to (1) adjunctive therapy for partial complex seizures; (2) post herpetic neuralgia; and (3) objective evidence of severe

---

[3]  Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

disease. Patients taking Gabapentin would be taped off over two weeks. Wang Decl. ¶ 7; Macias Decl. ¶ 14.

On May 15, 2011, Plaintiff submitted a CDCR 602HC requesting that he be provided with his original Gabapentin dosage. After he submitted his appeal, he was interviewed on June 15, 2011, by Defendant Nurse Practitioner Dhah at the First Level of Review. Plaintiff's request was denied. Wang Decl. ¶ 4; Macias Decl. ¶ 11, Zamora Decl. ¶¶ 13-14.

On June 24, 2011, Plaintiff sent his appeal to the Second Level. On July 7, 2011, Defendant Wang denied Plaintiff's appeal at the Second Level based on his medical knowledge and experience, and evaluation of Plaintiff's medical records.[4] Defendant Wang determined that no new information was presented to indicate that Plaintiff met the criteria for Gabapentin. Plaintiff was also being provided with Methadone and Ibuprofen for pain. Wang Decl. ¶ 6, Macias Decl. ¶ 12; Zamora Decl. ¶ 15.

The Second Level Response dated July 7, 2011, contained preprinted signature lines for Defendants Wang and Macias. Macias Decl. ¶ 7. Defendant Macias' review of the Second Level Response indicates that it was handled by designated reviewer J. Obaiza, Chief Support Executive for CSP. J. Obaiza reviewed and signed the response. Macias Decl. ¶ 8. Defendant Macias did not personally review or sign off on Plaintiff's appeal.[5] Macias Decl. ¶ 9.

Plaintiff was dissatisfied with the Second Level Response and submitted his appeal for further review. Zamora Decl. ¶¶ 10, 17. The purpose of the ICAB review is not to second-guess medical providers' decisions at the First and Second Levels, but rather to ensure that the decisions covered all of the inmates' issues. Zamora Decl. ¶ 1. Plaintiff's appeal submitted to

---

[4] In his complaint, Plaintiff alleges that Defendant Wang did not read his appeal or review his medical file. However, Plaintiff does not explain why he believes that Defendant Wang did not review his appeal, nor does he provide evidence to show that he has any personal knowledge of what Defendant Wang did or did not review. Accordingly, the fact is undisputed.

[5] In his complaint, Plaintiff alleges that Defendant Macias denied his appeal at the Second Level. However, Plaintiff has not submitted any evidence to dispute Defendant Macias' evidence that the appeal was assigned to J. Obaiza, and that she did not review or sign off on his appeal. Accordingly, these facts remain undisputed.

7

the ICAB for final review was handled by designated reviewer S. Simas, who reviewed the appeal and signed it. Zamora Decl. ¶ 11. Defendant Zamora did not personally review the appeal or sign off on it.[6] Zamora Decl. ¶ 12.

Plaintiff's claim that he qualified for non-formulatory use of Gabapentin under the exception for "post herpetic neuralgia" is incorrect.[7] Post herpetic neuralgia is nerve pain due to damage caused by the shingles virus. Wang Decl. ¶ 9. Defendant Wang's review of Plaintiff's appeal and a medical record attached to his complaint indicate that Plaintiff's complaints of pain in his left arm and hand arose after an old stabbing injury in 2003 for which he received surgery. Wang Decl. ¶ 10. Defendant Wang's review of Plaintiff's health records shows no indication that he suffered from post herpetic neuralgia. Wang Decl. ¶ 10.

When Defendant Wang reviewed Plaintiff's health records, it was his medical opinion that Gabapentin was not medically indicated because Plaintiff did not qualify under any of the three criteria. Wang Decl. ¶ 11.

Gabapentin also has a high potential for abuse, and must be used very carefully in the prison environment. Wang Decl. ¶ 11. Defendant Wang's review of Plaintiff's health records also indicated that he was hospitalized in March 2010 after rectally sequestering a syringe with heroin. Given this history, Defendant Wang believed that it was unlikely that in 2011, Plaintiff would have been approved by the Pain Committee for chronic opiate treatment or Gabapentin. Wang. Decl. ¶ 13.

In mid-2011, Defendant Moon became the Physician and Surgeon for Plaintiff's facility. Moon Decl. ¶ 3. Defendant Moon saw Plaintiff on August 24, 2011. His review of the notes indicates that he saw Plaintiff in follow-up for hepatitis C, medication refills and right shoulder

---

[6] In his complaint, Plaintiff alleges that Defendant Zamora denied his appeal at the final level of review. However, Plaintiff has not submitted any evidence to dispute Defendant Zamora's evidence that the appeal was assigned to S. Simas, and that he did not review or sign off on his appeal. Accordingly, these facts remain undisputed.

[7] To the extent that Plaintiff alleges in his complaint that he did qualify for this exception, Plaintiff, as a lay witness, is not qualified to render an opinion on his medication conditions. Fed. R. Evid. 701, 702. Accordingly, the fact remains undisputed.

pain.[8]  Moon Decl. ¶ 4.  Defendant Moon renewed Plaintiff's Methadone, referred him to the orthopedic specialist for follow up regarding a possible MRI of his neck and EMG of his shoulder, and requested that the procedure doctor give Plaintiff tender point injection(s) for his right shoulder pain.  Moon Decl. ¶ 5.  There is no indication in the progress note that Plaintiff complained of nerve pain and that Defendant Moon refused to discuss it with him.  Based on Defendant Moon's normal practice, if Plaintiff had made such a complaint, he would have documented it in his notes.  He did not deviate from his usual practice during the visit with Plaintiff.  Moon Decl. ¶ 6.

   Plaintiff told Defendant Moon that he understood the plan that they discussed, and that Defendant Moon would follow-up in six weeks.  Moon Decl. ¶ 7.

   Plaintiff later submitted a CDCR 602HC dated November 7, 2011, requesting medication for pain and to be seen by a doctor.  Moon Decl. ¶ 8.  Defendant Moon interviewed Plaintiff on November 16, 2011, regarding the appeal.  Based on a review of Plaintiff's pharmacy profile, Defendant Moon made the medical determination to approve Gabapentin.  Plaintiff's appeal was therefore granted at the First Level.  Moon Decl. ¶ 9.

   Defendant Moon is aware that there was a policy in effect in 2011 regarding the tapering and discontinuation of Gabapentin.  Whether an inmate such as Plaintiff qualified under the new guidelines is, in large part, based on the individual medical clinician's decision-making process and information available at the time.  Decisions can therefore vary even amongst medical providers without violating the appropriate standard of care.  Moon Decl. ¶ 10.

   Based on Defendant Wang's medical training, it is his expert medical opinion that Plaintiff received appropriate medical care within the standard of care in 2011 at CSP.  Wang Decl. ¶¶ 14, 16.

---

[8] Plaintiff contends that during the appeals process, no one examined him or reviewed his medical records. However, Defendant Moon submits a Medical Progress Note from the August 24, 2011, meeting.  According to the note, Defendant Moon performed a full examination.  Plaintiff did not attach this progress note to his complaint.  In any event, since Plaintiff has not submitted an opposition, he has not called into question the authenticity of the document or disputed its contents.

Based on Defendant Moon's medical training, it is his expert medical opinion that Plaintiff received appropriate medical care within the standard of care in 2011 at CSP.  Moon Decl. ¶ 13.

## IV.     DISCUSSION

### 1.     Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, an inmate must demonstrate deliberate indifference to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.  Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

2. Analysis

a. *Defendants Wang and Moon*

Plaintiff alleges that Defendants Wang and Moon were deliberately indifferent when they refused to renew his Gabapentin prescription, purportedly without an examination or review of his medical records.

It is undisputed that in 2011, prior to the involvement of either Defendant Wang or Moon, CDCR changed the regulations relating to Gabapentin and approved it for use in only three situations.  It is undisputed that Defendant Wang denied Plaintiff's appeal at the Second Level on July 7, 2011, because, based on his medical knowledge and review of Plaintiff's health records, Plaintiff presented no new information to indicate that he met the criteria for a Gabapentin prescription.  He also knew that Plaintiff was taking Methadone and Ibuprofen at the time.

Finally, it is undisputed that Plaintiff saw Defendant Moon on August 24, 2011, and received an examination.  Defendant Moon renewed Plaintiff's Methadone, referred him to an orthopedic specialist for a possible MRI and EMG, and suggested tender point injections for his right shoulder pain.  It is Defendant Moon's usual practice to list all complaints on the progress

note, and the progress note for August 24, 2011, does not indicate that Plaintiff complained of nerve pain.

Defendants Wang and Moon argue that the undisputed facts show that Plaintiff's allegations are nothing more than a difference of medical opinion.

The Court agrees. Defendants have met their burden of demonstrating the absence of evidence demonstrating that they acted with deliberate indifference.

Defendant Wang denied Plaintiff's appeal at the Second Level, but there is no indication that he knew of, and disregarded, an excessive risk to Plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In fact, in the Second Level denial, Defendant Wang explained that Plaintiff did not have one of the three conditions to support a Gabapentin prescription. He also noted that Plaintiff was receiving Methadone and Ibuprofen for pain, and that his shoulder injury was being addressed appropriately. Defendant Wang outlined Plaintiff's treatment, including a March 11, 2011, appointment with an orthopedic specialist, subsequent x-rays and an MRI, and treatment by Dr. Ulit. Defendant Wang noted that Dr. Ulit performed a pain assessment on May 18, 2011, which he would be presenting to the Pain Committee for recommendation of opioid use or possibly increasing the Gabapentin dose. Defendant Wang concluded, "Until further evaluation, your request for Gabapentin is denied at this time." Wang Decl., Ex. B. Under these facts, there is no evidence to demonstrate a purposeful act, or failure to respond to, Plaintiff's pain or possible medical need.

As to Defendant Moon, the undisputed evidence shows that he performed a thorough examination and provided medication, as well as referrals for further testing and/or treatment. Defendant Moon refilled Plaintiff's Methadone and suggested that he receive injections to lessen his shoulder pain. There is no indication that he knew of, and disregarded, an excessive risk to Plaintiff's health or safety. Farmer, 511 U.S. 825, 837 (1994).

While there is a dispute as to whether Plaintiff raised the issue of nerve pain with Defendant Moon and he refused to discuss it, the dispute does not alter the outcome given

Defendant Moon's examination and treatment.  Defendant Moon knew that Plaintiff was receiving pain medication, which he renewed.  Moreover, even according to Plaintiff's allegation that Defendant Moon wanted to let the appeal "deal with" his nerve pain, Defendant Moon did not ignore Plaintiff's complaints.  Even taking Plaintiff's facts as true, Defendant Moon simply deferred to the pending appeal for resolution of the issue.

The undisputed facts therefore show that Plaintiff simply disagreed with Defendant Wang's decision and Defendant Moon's treatment.  The needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). However, a difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference.  Snow, 681 F.3d at 987, (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Here, there is no evidence that either Defendant Wang or Defendant Moon's chosen of course of treatment was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to Plaintiff's health.

Even if Defendants' determinations were incorrect, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1977); Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

The burden now shifts to Plaintiff to produce evidence sufficient to demonstrate the existence of a genuine dispute of fact. Plaintiff's verified complaint fails to produce any such evidence.

Plaintiff alleges that he met one of the three situations where a Gabapentin prescription is permitted. However, as a lay witness, Plaintiff is not qualified to render an opinion on his medication conditions. Fed. R. Evid. 701, 702.

Plaintiff also submits evidence to show that in November 2011, Defendant Moon approved a Gabapentin prescription. However, that he may have ultimately qualified does not mean that at the time of Defendant Wang's July 2011 denial, or Defendant Moon's August 2011, examination, either acted with deliberate indifference. Defendant Moon submitted evidence explaining that such decisions are based, in large part, on the individual medical clinician's decision-making process and information available at the time. Decisions can therefore vary even amongst medical providers without violating the appropriate standard of care. Moon Decl. ¶ 10.

    b. *Defendants Zamora and Macias*

Plaintiff attempts to state a claim against Defendants Zamora and Macias based on their role in reviewing his appeals. However, the undisputed facts show that neither Defendant Zamora nor Defendant Macias actually reviewed and signed off on Plaintiff's appeals. Rather, each appeal was designated to a staff reviewer for decision. Although their names appear pre-printed on the appeal decisions, the appeals are signed by the staff reviewer.

Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his own misconduct. Iqbal, 556 U.S. at 676-77. While there are situations were an appeal reviewer may be held liable for conduct underlying the appeal, such situations only arise where a reviewer willfully turns a blind eye to constitutional violations being committed by subordinates. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).

Under the undisputed facts, Defendants Zamora and Macias did not ignore a constitutional violation by a subordinate because they had no personal knowledge of Plaintiff's appeal issues.

## V.   FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within fourteen (14) days from the date of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 11, 2015**                    /s/ *Dennis L. Beck*
                                                    UNITED STATES MAGISTRATE JUDGE